UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **SHARON L. DAVIDSON,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     vs. | ) CAUSE NO. 1:16-cv-569-WTL-MPB |
| | ) |
| **PNC BANK, N.A.,** | ) |
| | ) |
|     **Defendant.** | ) |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS**

This cause is before the Court on the Defendant's motion to dismiss (Dkt. No. 23). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the Defendant's motion for the reasons and to the extent set forth below.

## I.    RULE 12(b)(6) STANDARD

The Plaintiff is suing PNC Bank, N.A. on behalf of a putative class, alleging that the Defendant systematically violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and its implementing regulation, Regulation Z, by failing to provide the Plaintiff and others with accurate payoff statements because the statements do not include insurance claim proceeds. The Defendant moves to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a claim for which relief can be granted.[1] In reviewing a Rule 12(b)(6) motion, the Court "must accept all well pled facts as true

---

[1] The Court acknowledges that, while neither party discusses standing, the Plaintiff must show that she suffered an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). Despite the lack of discussion, the Court does not decide the Defendant's motion on the issue of Plaintiff's standing. "The Supreme Court has instructed that a court 'may find that concerns of judicial economy and restraint are overriding' and therefore decide other threshold issues before subject matter jurisdiction."

and draw all permissible inferences in favor of the plaintiff." *Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). The Court "first identifies the well-pleaded factual allegations by discarding the pleadings that are 'no more than conclusions.'" *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Then, the Court must "determine[] whether the remaining well-pleaded factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.*

## II. BACKGROUND

The facts that follow are taken in the light most favorable to the Plaintiff, Sharon L. Davidson. Additional relevant facts are included in the Discussion section below.

In May 2005, the Plaintiff entered into a mortgage loan in the principal amount of $62,000.00 (the "Mortgage") using her residential property, located at 507 Curtis St., Crawfordsville, Indiana (the "Property"), as security for the Mortgage. PNC Bank, N.A. ("PNC") is the current owner and servicer of the Mortgage. The Mortgage requires Plaintiff to maintain property insurance and provides as follows regarding insurance proceeds in the event of an insurance claim:

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds . . . . shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security interest is not lessened. During such repair or restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction . . . Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. . . . If the restoration or repair is not

---

*Meyers v. Oneida Tribe of Indians of Wisc.*, 836 F.3d 818, 822 (7th Cir. 2016) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586 (1999) (resolving case on an issue other than standing because the issue was "so easily and readily resolved")). Because the parties have not briefed the standing issue, which would require expenditure of additional time and judicial resources, the Court decides the Defendant's motion on an easily resolvable threshold issue - whether the Plaintiff has stated a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

2

economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.[2]

Dkt. No. 24-1 at 7-8.

On or about September 1, 2014, Plaintiff's Property was, without her knowledge, significantly damaged by methamphetamine use by others, leaving her home uninhabitable, but reparable. Plaintiff submitted a claim to her insurance company, which issued a check on November 6, 2014, in the amount of $24,357.33 payable jointly to the Plaintiff and PNC. The Plaintiff submitted the check to PNC, which PNC held in a restricted escrow account. PNC made a series of disbursements totaling $21,802.00 from the insurance proceeds for repairs to the Property. At a point after $21,802.00 had been disbursed, PNC sent the Plaintiff a letter stating that "there remains only $2,555.33 in your restricted escrow account. We will be unable to issue the remaining balance until 100% of the work is completed." Comp. ¶ 31.

The Plaintiff requested and PNC provided the Plaintiff with a written payoff statement on January 11, 2016, stating that the total balance due on her Mortgage was $41,076.87. In the payoff statement, PNC itemized the following charges: $38,737.42 in unpaid principal balance; $469.85 in interest; $1,811.10 in unpaid late charges; $46.40 in unpaid "Other Fees"; and a $12.00 "Recordation Fee." Dkt. No. 24-2 at 2. It also contained listings for "Record/Reconveyance," "Estimated Charges," "Outstanding Corporate Advances," and a "Priority Service Fee," all of which showed zero balances. *Id.* The payoff statement additionally advised that "PNC Mortgage will pay all escrowed tax and insurance payments until receipt of payoff funds" and that "[a]ny overage of funds, including amounts in escrow, will be mailed to

---

[2] The Plaintiff cites a shorter excerpt from the same provision of the Mortgage. *See* Compl. ¶ 24 (citing Dkt. No. 24-1 at 7-8).

3

you within twenty (20) business days of the payoff date." *Id.* The payoff statement did not refer to the $2,555.33 in insurance proceeds, nor did it list the total funds held in escrow.

The Plaintiff filed this lawsuit on March 14, 2016, alleging that PNC violated TILA and Regulation Z by failing to provide her with an accurate payoff statement because the statement did not include the remaining insurance proceeds, which, the Plaintiff contends, "are potentially available, in whole or in part, as a credit against [her] debt."[3] Comp. ¶ 39. PNC responds that TILA and its implementing regulation do not require that the Plaintiff's insurance proceeds be included in the payoff statement.

### III.   DISCUSSION

Prior to the enactment of the Dodd-Frank Act, TILA and its implementing regulation, Regulation Z, were promulgated by the Federal Reserve Board. Regulation Z introduced the payoff statement requirement. The Dodd-Frank Act amended TILA, adding a payoff statement requirement into the statute itself:

> A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower.

15 U.S.C. § 1639g (TILA section 129G).[4] As the parties note, neither the text of TILA nor the implementing regulation provide instruction regarding what constitutes an "accurate payoff

---

[3] This Court granted the Plaintiff's unopposed motion to delay briefing on class certification until after the resolution of the Defendant's motion to dismiss. *See* Dkt. No. 42. Accordingly, the Court addresses factual allegations related to the Plaintiff rather than to a putative class.

[4] The Dodd-Frank Act also transferred rulemaking authority from the Federal Reserve Board to the Consumer Financial Protection Bureau, which created the current and applicable version of Regulation Z. The current version of Regulation Z explains the payoff statement requirement, in part, as follows: "[A] creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date." 12 C.F.R. § 1026.36(c)(3).

balance," though the section-by-section analysis in the Federal Register provides some additional context:

> The Bureau does not believe further regulation on procedures around payoff balances is necessary. A payoff balance request is any request from a consumer, or appropriate party acting on behalf of the consumer, which inquires into the total amount outstanding on the loan, or the amount needed to pay off the loan. While such requests are most often made when a consumer is refinancing their loan, payoff balance requests are not limited to this context. . . . The Bureau is not making any changes to the requirements of the accuracy of the statement. The Bureau believes payoff statements should be issued according to the best information available at the time . . . .

Mortgage Servicing Rules Under the Truth in Lending Act (Regulation Z) V. Section-by-Section Analysis, 78 Fed. Reg. 10902-01, 10957-10958 (Feb. 14, 2013).

Thus, PNC Bank is obligated under TILA to provide, when requested, a payoff statement that contains an accurate outstanding loan balance "according to the best information available at the time." *Id.* Relying on a decision from the Northern District of California, *McLaughlin v. Wells Fargo Bank, NA*, No. C 15-2904 WHA, 2015 WL 10889993, (N.D. Ca. Oct. 29, 2015), the Plaintiff argues that insurance claim proceeds must be included in a payoff statement for it to be accurate. Dkt. No. 25 at 5. In *McLaughlin*, the Northern District of California determined that, because the mortgage document in that case allowed the lender to apply the insurance proceeds to reduce the balance on the mortgage or cover home repair costs, "[the] payoff statement should have deducted the insurance proceeds still held by the bank and at least should have added a note that the impounded funds potentially could be used for home repair in the event the loan was not paid off." *McLaughlin*, 2105 WL 10889993 at *1. The *McLaughlin* court reasoned that "[t]aking either option, it is indisputable that the $16,490.35 in insurance proceeds would have been credited to plaintiff's loan balance in some way," *id.*, either through a direct credit to the loan balance or "if [the] plaintiff wished to fully satisfy her loan by paying the amount quoted on the payoff statement, the money would clearly *not* be used for restoration or repair," *id.*

5

(emphasis in original), which, arguably, would have left the insurance proceeds available to credit against the *McLaughlin* plaintiff's loan balance. The Plaintiff argues that the *McLaughlin* court's "interpretation of TILA's payoff statement provision is the only one supported by common sense." Dkt. No. 25 at 5.

The Court does not agree.[5] Unlike the terms of the mortgage in *McLaughlin*, the Plaintiff's Mortgage did not allow insurance proceeds to be applied to the balance on the Plaintiff's Mortgage except when restoration or repair of the Plaintiff's Property was not economically feasible or PNC's security would be lessened. *See* Dkt. No. 24-1 at 8. The Plaintiff does not suggest that either condition applied to the Plaintiff's Property. Therefore, the Plaintiff would not receive a direct credit to her loan balance. Additionally, had the Plaintiff intended to pay her Mortgage balance in full, the insurance proceeds would not have automatically reduced the Plaintiff's loan balance or been credited to her Mortgage balance. Instead, the payoff statement explained that, "[a]ny overage of funds, including amounts in escrow, [would] be mailed to [her] within twenty (20) business days of the payoff date."[6] Dkt. No. 24-2 at 2. Plaintiff would have known what that overage amount was because, prior to receiving the payoff statement, she received a letter from PNC informing her of the total remaining insurance proceed balance and explaining that that amount would not be released until repair work was completed. The Plaintiff's payoff statement listed the Plaintiff's outstanding

---

[5] The Court notes that at least one other court has adopted the *McLaughlin* court's reasoning: *Jamison v. Bank of America, N.A.*, --- F. Supp. 3d ----, 2016 WL 3653456, at *6 (E.D. Ca. July 7, 2016).

[6] Although the parties do not refer to Regulation X and its provisions governing escrow accounts and the transfer or refund of escrow balances, it is possible that these regulations govern the insurance proceeds at issue. *See* 12 C.F.R. § 1024 *et seq.* However, "[i]t is not this court's responsibility to research and construct the parties' arguments." *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) (quotation and citation omitted). Therefore, the Court does not address the application of Regulation X to the facts of this case.

loan balance as $41,076.87. There is no dispute that this is the full amount she owed on the Mortgage at that time, separate and apart from the insurance proceeds or any other funds held in escrow on her behalf. Because the payoff statement contained an accurate payoff balance, the Plaintiff has failed to state a claim that PNC violated TILA and Regulation Z.

### IV  CONCLUSION

For the reasons set forth above, the Defendant's motion to dismiss (Dkt. No. 23) is **GRANTED**, and the Plaintiff's claims are **DISMISSED WITH PREJUDICE**. In light of this ruling, the Defendant's motion for oral argument (Dkt. No. 29) is **DENIED**.

SO ORDERED December 9, 2016.

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.